IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DEANNETTEE L. WOODARD,                                         CV. 06-6278 AS

                Plaintiff,                                         FINDINGS AND
                                                                        RECOMMENDATION

        v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.

ASHMANSKAS, Magistrate Judge:

## INTRODUCTION

Plaintiff, Deannettee Woodard ("Woodard"), brings this action pursuant to the Social Security Act, 42 USC § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for a period of disability and disability insurance benefits. The Commissioner concedes that legal error occurred, and seeks remand for further administrative proceedings. For the reasons set forth below, this matter should be remanded for further administrative proceedings.

1 - FINDINGS AND RECOMMENDATION

## PROCEDURAL BACKGROUND

Woodard filed an application for benefits on June 10, 2003, alleging disability since November 1, 2002, due to HIV infection. Woodard's date last insured for Title II disability insurance benefits is December 31, 2007. Her application was denied initially and upon reconsideration. On December 2, 2005, a hearing was held before an Administrative Law Judge ("ALJ"), at which Woodard amended her alleged onset date to May 19, 2003. In a decision dated June 26, 2006, the ALJ found Woodard was not entitled to benefits. On September 1, 2006, the Appeals Council denied Woodard's request for review.

Woodard now seeks judicial review of the Commissioner's decision.

## FACTUAL BACKGROUND

Born in 1966, Woodard was 37 years old on her alleged onset date. She has a general education diploma. Woodard has worked as a seamstress, cashier, and temporary laborer. The medical records submitted in this case accurately set forth Woodard's medical history as it relates to her claim for benefits. The court has carefully reviewed the records, and the parties are familiar with them. Accordingly, the details of those records will not be recounted here.

## STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 USC § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F3d 179, 182 (9th Cir 1995), *cert denied*, 517 US 1122 (1996).

The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F2d 841, 849 (9th Cir 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 USC § 405(g); *see also Andrews v. Shalala*, 53 F3d 1035, 1039 (9th Cir 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F2d 771, 772 (9th Cir 1986). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F3d at 1039-40.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 CFR § 404.1520. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F3d 1094, 1098-99 (9th Cir 1999):

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity. If so, the claimant is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate claimant's case under step two. 20 CFR § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. If not, the claimant is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under step three. 20 CFR § 404.1520(c).

Step Three. Because disability cannot be based solely on a severe impairment, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the Social Security Administration ("SSA") regulations, 20 CFR Part 404, Subpart P, Appendix 1. If so, the claimant is disabled. If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner proceeds to step four. 20 CFR § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. If so, the claimant is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner proceeds to step five. 20 CFR § 404.1520(e).

Step Five. The Commissioner determines whether the claimant is able to do any other work. If not, the claimant is disabled. If the Commissioner finds the claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates a significant number of jobs exist in the national economy that the claimant can do, then the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 CFR § 404.1520(f)(1).

At steps one through four, the burden of proof is on the claimant. *Tackett*, 180 F3d at 1098. At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id*

## ALJ's DECISION

At step one, the ALJ found Woodard had not engaged in substantial gainful activity since the alleged onset of disability on May 19, 2003. This finding is not in dispute.

At step two, the ALJ found Woodard had the medically determinable severe impairments of Human Immunodeficiency Virus ("HIV"), fibromyalgia, chronic obstructive pulmonary disease ("COPD"), carpal tunnel syndrome, obesity, and gastroesophageal reflux disease. This finding is not in dispute.

At step three, the ALJ found that Woodard's impairments did not meet or equal in severity one listed in the regulations. This finding is disputed.

At step four, the ALJ determined that Woodard retained the ability to lift 20 pounds occasionally and 10 pounds frequently, stand or walk for about six hours, and sit for about six hours, during an eight-hour work day. The ALJ found that Woodard was able to walk for 15-20 minutes at a time, and that she had a moderately limited grip in that she may lose her grip occasionally because of numbness. The ALJ found that Woodard could not perform constant or prolonged forceful gripping. He concluded that Woodard retained the residual functional capacity to perform a restricted range of light work.

At step five, the ALJ found that Woodard retained the capacity to perform light and/or sedentary work, including work as a stationary cashier and a garment sorter. As a result, the ALJ found Woodard not disabled within the meaning of the Act.

5 - FINDINGS AND RECOMMENDATION

## **DISCUSSION**

Woodard contends that the ALJ erred by: (1) failing to find that her impairments met or equaled in severity one listed in the regulations; (2) improperly rejecting the opinions of treating physicians; (3) finding her not fully credible; and (4) finding lay witnesses not fully credible.

I. The Listing of Impairments

At step three, the ALJ determines if a claimant's impairment meets or equals an impairment listed in Appendix 1 to Subpart P of Regulations No. 4. The Listing of Impairments ("the List") describes specific impairments of each of the major body systems "which are considered severe enough to prevent a person from doing any gainful activity." *See* 20 CFR § 404.1525. If a claimant meets or equals a listed impairment he or she will be found disabled at this step without further inquiry. *See* 20 CFR § 404.1520(d).

The List describes the characteristics of each impairment. The description includes the "symptoms, signs and laboratory findings" that make up the characteristics of each listed impairment. 20 CFR § 404.1525. To meet a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment. To equal a listed impairment, a claimant must establish signs, symptoms and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is not listed, then to the listed impairment "most like" the claimant's impairment. 20 CFR § 404.1526.

Woodard argues that the ALJ erred in concluding that her impairments did not meet or equal a listed impairment, citing *Mylinh v. Barnhart,* Cv. 05-866-AS. In *Mylinh,* I admonished counsel, and the Commissioner, for failing to recognize that the claimant's condition met the listing for HIV infection. *Mylinh*, pp. 16-17. Here, counsel contends that Woodard meets or

equals the listing for HIV, but counsel fails to identify precisely what evidence corresponds to specific ennumerated requirements of the listing. It is the professional responsibility of a claimant's attorney to identify for the court which piece of evidence supports his or her assertion. In this case, that means that it is the responsibility of Woodard's counsel to identify which evidence indicates that she meets or equals a specific element of the listings. It is not appropriate for counsel to make broad assertions on the assumption that the court will examine the record in order to find whether any evidence supports those assertions.

To meet the listing for HIV a claimant must first show documentation establishing HIV infection. 20 CFR Subpt. P, App. 1, § 14.00D3. Woodard's medical record establishes this infection. Tr. 139. A claimant must then manifest at least one of twelve listed opportunistic AIDS-related diseases. 20 CFR Subpt. P, App. 1, § 14.08A-M. Those diseases are specific, named conditions in twelve categories: bacterial infections; fungal infections; protozoan or helminthic infections; viral infections; malignant neoplasms; conditions of the skin or mucous membranes not responding to treatment; hematologic abnormalities; neurological abnormalities; HIV wasting syndrome; diarrhea lasting for one month or longer resistant to treatment; cardiomyopathy; nephropathy; or one or more of the final category of infections, which must be resistant to treatment or requiring hospitalization or intravenous treatment three or more times in one year. This final category includes sepsis, meningitis, pneumonia, septic arthritis, endocarditis and "sinusitis documented by appropriate medically acceptable imaging." There is no evidence that Woodard has any of these conditions, except sinusitis. Woodard does have fibromyalgia, chronic obstructive pulmonary disease, carpal tunnel syndrome, obesity and gastroesophageal reflux disease. However, she does not argue that any of those conditions fall

7 - FINDINGS AND RECOMMENDATION

within the twelve categories listed above. The record does not show that Woodard's sinusitis is resistant to treatment, nor has it required hospitalization or intravenous treatment.

Alternatively, a claimant may meet the listing by showing:

> Repeated (as defined in 14.00D8) manifestations of HIV infection, (including those listed in 14.08A-M, but without the requisite findings....) resulting in significant, documented symptoms or signs (e.g., fatigue, fever, malaise, weight loss, pain, night sweats) and one of the following at the marked level (as defined in 14.00D8): 1. Restrictions of activities of daily living; or 2. Difficulties in maintaining social functioning; or 3. Difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 CFR Subpt P, App. 1, § 14.08N.  "Repeated" means that:

> the conditions occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more; or the conditions do not last for 2 weeks but occur substantially more frequently than 3 times in a year or once every 4 months; or they occur less often than an average of 3 times a year or once every 4 months but last substantially longer than 2 weeks.

20 CFR Subpt P, App. 1, § 14.00D8.  Woodard argues that she "has regular sinus infections that last for a week at a time and [that] require different antibiotics for treatment."  Plaintiff's Opening Brief, 13.  Woodard cites an October 1, 2004, chart note in which Leslie Mehlhaff, M.D., notes that Woodard reported a history of recurrent sinusitis, diagnosis acute sinusitis, and prescribes Bactrim.  Tr. 191.  Woodard first saw Dr. Mehlhaff on September 13, 2004.  Tr. 192.

Woodard cites a July 7, 2005, chart note documenting an urgent care clinic visit in which James L. Self, M.D., noted that Woodard had been treated for a sinus infection in January 2005, diagnosed a sinus infection, and prescribed Keflex which "apparently worked back in January."  Tr. 203-04, 205.  Robert Pelz, M.D., examined Woodard on August 18, 2005, and reported "She gets frequent sinus infections, which she treats with over-the-counter preparations.  She occasionally uses nasal saline and she has a Nasonex sample that she uses occasionally."  Tr.

8 - FINDINGS AND RECOMMENDATION

267. Woodard testified that her medications caused sinus and upper respiratory infections. Tr. 326. However, her physicians appear to believe that her sinusitis and respiratory infections are due to her heavy smoking. Tr. 302. Woodard stated that she had had eight sinus infections in the past year, and 15-20 sinus infections in the prior two and a half years. *Id.* Woodard testified that when she had a sinus infection she was unable to get out of bed for a week.

The record documents sinus infections in June 2004, September 2004, January 2005, July 2005, and December 2005. Tr. 211, 191, 205, 204, 302. The first question is whether Woodard's sinus infections are "repeated" within the meaning of the regulation. Assuming, without deciding, that Woodard's documented sinus infections occur "on an average of three times a year," they do not, according to Woodard's testimony, last "2 weeks or more." 20 CFR Subpt P, Appendix 1, § 14.00D8, Tr. 326. According to Woodard's testimony, the infections occur about eight times a year. Assuming, without deciding, that Woodard's testimony as to the diagnosis, frequency, and severity of her sinsusitis constitutes "documented symptoms or signs" within the meaning of the regulation, the evidence does not establish that Woodard's condition is equal in severity and duration to the characteristics of a listed impairment. 20 CFR Subpt P, App. 1, § 14.08N; 20 CFR § 404.1526.

The ALJ's determination that Woodard's condition did not meet or equal in severity a listed impairment is supported by substantial evidence.

II. Physician Opinions

In March 2004, Robert Pelz, M.D., wrote:

> Deannette Woodard is a patient of mine whom I see in sub-
> specialty care for her HIV disease. Mrs. Woodard has asked

9 - FINDINGS AND RECOMMENDATION

> me to write a letter supporting her application for disability.
>
> From the standpoint of her HIV care, the patient has done extremely well on her therapy with an excellent response to her antiviral cocktail....She has not had any HIV-related complications.
>
> I saw her recently....Her primary source of disability is due to what I believe to be fibromyalgia. She describes a profound muscle pain and fatigue with minimal exertion. She finds it nearly impossible to walk to the bus stop, which is about a half block away.
>
> She is a heavy smoker and has been for many years, and has tried unsuccessfully to quit in the past. I believe as a result of her prior and ongoing tobacco abuse, she has some element of chronic obstructive pulmonary disease and pulmonary function testing has been ordered to quantitate this. I have encouraged her on numerous occasions to stop smoking and have worked with her to try to help manage her fibromyalgia, which remains fairly debilitating.
>
> By the patient's description of her physical limitations, I would agree with her assessment that at the present, she is unable to work full-time, however fibromyalgia is a treatable illness and I believe that with time and dedication on the part of the patient and her physicians, she should be able to make partial or full recovery from her current level of disability.

Tr. 180.

In May 2004, Claudia Goulston, M.D., wrote "My patient Deannettee Woodard has completed disability paperwork with my partner, Dr. Robert Pelz. She is unable to work due to her medical conditions." Tr. 172.

The ALJ rejected both doctors' opinions because they did not say "that the claimant was disabled under the Social Security standard of disability." Tr. 17.

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Holohan v. Massanari,* 246 F3d 1195, 1202 (9th Cir 2001); 20 CFR § 404.1527(d)(2). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Id.* at 1202, citing *Reddick v. Chater,* 157 F3d 715, 725 (9th Cir 1998).

The Commissioner concedes that the ALJ failed to articulate clear and convincing reasons to reject the physicians' opinions, and argues that this matter should be remanded to allow the ALJ to consider those opinions as well as the lay witness evidence.

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir.), *cert. denied,* 531 U.S. 1038 (2000). The court's decision turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel,* 211 F.3d at 1178. The court should grant an immediate award of benefits when:

/ / /

/ / /

11 - FINDINGS AND RECOMMENDATION

>(l) the ALJ has failed to provide legally sufficient reasons for
>rejecting such evidence, (2) there are no outstanding issues
>that must be resolved before a determination of disability can
>be made, and (3) it is clear from the record that the ALJ would
>be required to find the claimant disabled were such evidence
>credited. *Id*

The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *See id.* at 1178 n.2.

The ALJ improperly rejected the testimony of Drs. Pelz and Goulston. However, even if this testimony were fully credited, it would not require the ALJ to find Woodard disabled. Neither physician opined as to the duration of Woodard's inability to work, and Dr. Pelz indicated that the inability to work was temporary. Because there are outstanding issues that must be resolved by the ALJ, this matter should be remanded for further administrative proceedings.

III. Lay Testimony

Dody Scott, Woodard's sister, stated in July 2003 that she sees Woodard two to three times a week. Tr. 77. Scott wrote that Woodard "used to be able to stand, walk, lift up to 60 lb. Bas[ical]ly she could hold down a job[.] She can no longer do these things." Tr. 78. Ms. Scott stated that her sister "gets tired easily." Tr. 82.

The ALJ failed to address Scott's evidence. The Commissioner concedes that this was error. This evidence, if credited, does not establish disability. On remand the ALJ should properly address and weigh this testimony.

IV. Credibility

12 - FINDINGS AND RECOMMENDATION

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala,* 53 F3d 1035, 1039 (9th Cir 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir 1998). Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reason for rejecting the claimant's testimony must be "clear and convincing." *Id.* The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.* The evidence upon which the ALJ relies must be substantial. *Reddick,* 157 F3d at 724. *See also Holohan v. Massinari,* 246 F3d 1195, 1208 (9th Cir 2001). General findings (e.g., "record in general" indicates improvement) are an insufficient basis to support an adverse credibility determination. *Reddick* at 722; *see also Holohan,* 246 F3d at 1208. The ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Thomas v. Barnhart,* 278 F3d 947, 958 (9th Cir 2002).

The ALJ noted that there was evidence of impairments that could produce some of Woodard's symptoms, but "the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." Tr. 17. The ALJ stated that his determination of Woodard's limitations in standing and walking were based on alleged degenerative disc disease which was not verified by the record. *Id.* Woodard complained of right lower back pain radiating into the leg in February 2005. Tr. 190. Leslie Mehlhaff, M.D., suspected disc herniation, and Woodard was instructed to return if she was not better in two weeks. She did not return. In April 2005, Woodard reported bilateral arm numbness, but a cervical MRI scan was "completely normal." Tr. 188. In June 2005, Woodard reported lower

left back pain, for which heat, ice, stretching, ibuprofen, and Vicodin were prescribed. Tr. 187. Dr. Mehlhaff specified that there were no refills on the Vicodin.

Thereafter, in July 2005, Woodard established care with Delta D. Ruscheinsky, M.D. Tr. 306. Dr. Ruscheinsky wrote in August 2005, that "she tells me that she is having some problems with ongoing back pain. She gets #30 Vicodin per month for her chronic back pain from her previous provider. She has run out. She is requesting a refill today. I still do not have previous records from her provider." Tr. 305. Dr. Ruscheinsky refilled the prescription.

Woodard testified that she can walk 15 to 20 minutes, and then must sit for an hour. Tr. 328. She testified that her doctors told her this was the result of a herniated disc. *Id.*

The ALJ stated that his determination that Woodard had a moderately limited grip was based on carpal tunnel syndrome, although Woodard testified that the braces had helped the condition. Tr. 17, 329. The ALJ concluded that the record did not support limitations to the extent alleged by Woodard.

The ALJ articulated clear and convincing reasons based upon substantial evidence to find that Woodard's assertions as to the intensity, persistence, and limiting effects of her impairments are not fully credible.

## **RECOMMENDATION**

For the reasons set forth above, this matter should be remanded for further administrative proceedings pursuant to sentence four of 42 USC § 405(g), so that the ALJ can consider the opinions of the physicians and the statement of the lay witness, and final judgment should be entered.

**SCHEDULING ORDER**

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due December 26, 2007.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.  If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

Dated this 11th day of December, 2007.

    /s/ Donald C. Ashmanskas
Donald C. Ashmanskas
United States Magistrate Judge